

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

MICHAEL MOTES,                     )
                                   )
        Plaintiff,                 )
                                   )
   vs.                             )
                                   )          6:15-cv-00961-LSC
MIDLAND FUNDING, LLC, *et*         )
*al.*,                             )
                                   )
        Defendants.                )
                                   )

MEMORANDUM OF OPINION

Before the Court is Defendants', Midland Funding, LLC, and Midland Credit Management, Inc. (collectively "Midland"), Motion for Summary Judgment (Doc. 25), as well as Plaintiff Michael Motes's ("Motes") First Motion to Strike (Doc. 33) and Motion to Strike (Doc. 39). Motes brought this action alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). Motes also asserts state-law claims for invasion of privacy, wanton conduct, malicious prosecution, and negligent, wanton, or intentional hiring, training, and supervision of incompetent debt collectors. For the reasons stated below, Midland's motion for summary judgment is due to be granted in part and denied in

part. Motes's Motion to Strike (Doc. 33) and Midland's Motion to Strike (Doc. 39) are due to be denied as moot.

## I.   BACKGROUND

Motes has lived in Crane Hill, Alabama with his wife Sherry Motes ("Sherry") since 1996.[1] (Motes Dep. at 16.) The United States Postal Service website lists the Crane Hill address as located in Cullman County, Alabama. (Smith Dec. ¶ 11, Smith Dec. Ex. 8.) GE Capital Retail Bank, which is now Synchrony Bank ("Synchrony") provided a credit account ("SB account") for an individual named "MKE Motes" at the Crane Hill address. (Murphy Dec. Ex. 3.) Motes does not dispute that payments on the SB account were made from Sherry's bank account from February 2012 to December 2013. However, Motes professes that he did not open or ever have any credit account with Synchrony. (Motes Dep. at 282-83.) No payments have been made on the SB account since December 2013, and a balance of $2,069.37 remains unpaid. (Murphy Dec. Ex. 3 & 4.)

After seven months without receiving any payments on the SB account, Synchrony charged-off the account on July 16, 2014. (*Id.* at Ex. 3.) Midland claims that in August 2014, it bought a number of charged-off accounts from Synchrony, including the SB account. (*Id.* at ¶ 3.) Midland

---

[1] Motes's address has been redacted from the public record. Therefore, it will be referred to as the "Crane Hill address" in this opinion.

provides a Bill of Sale and an Affidavit of Sale of Account by Original Creditor as proof of this transaction. (*Id.* at Ex. 1 & 2.) According to Midland, the Bill of Sale "assigned all of [Synchrony's] rights, title, and interest" in the purchased accounts to Midland, including the SB account. (*Id.* at ¶ 5.) The affidavit of Synchrony's authorized representative states that "Synchrony . . . sold a pool of charge-off accounts . . . to Midland," and declares that "[Synchrony] has a process to detect and correct errors on these accounts." (*Id.* at Ex. 2.) However, Motes states that this process does not check for accuracy, but simply ascertains that the data "meets the expectations of what should be there." (Murphy Dep. Vol. 1 at 66-9.) Midland also charges that the sale involved transfer of a "Final Data File," which "contained Synchrony Bank's electronic records and other records on the individual accounts purchased by Midland," including information about the SB account which was extracted by Midland and contained in a Field Data sheet. (Murphy Dec. ¶ 5.)

The parties do not dispute that Synchrony also gave Midland two account statements for the SB account, which list "MKE Motes" as the account owner and the Crane Hill address as the mailing address. (*Id.* at ¶ 7 & Ex. 4.) Midland attempted to collect on this debt, calling Motes seven times and sending him "some" letters in September and November 2014.

(Murphy Dec. ¶ 10.) However, Motes admits that he never spoke to Midland directly. (Motes Dep. at 252-53.) Further, Midland only communicated with Motes, Synchrony, Zarzaur & Schwartz, P.C. ("Zarzaur"), credit reporting agencies, and the Small Claims Courts of Cullman and Winston Counties about the SB account. (Murphy Dec. ¶ 11.)

By November 20, 2014, Midland placed the SB account with its outside counsel, Zarzaur, for collection. (Smith Dec. ¶ 4 & 5.) Midland gave Zarzaur access to the following documents related to the SB account: "[1] Two (2) monthly account statements . . . [2] The Field/Seller Data sheet . . . [3] The Bill of Sale between Synchrony and Midland Funding . . . [4] An affidavit of Synchrony's Authorized Representative regarding the Bill of Sale . . . [5] A[] [Midland] validation letter . . . and [6] Other charge-off information from Synchrony." (*Id.* at ¶ 6.) Midland relates that after multiple unsuccessful attempts to collect the debt from "MKE Motes," Zarzaur reviewed the evidence and "had a good faith belief that MKE Motes owed the Synchrony debt, there were no legal or procedural barriers to filing suit, and Midland could prevail at trial." (*Id.* at ¶ 7 & 9.) Motes disputes this assertion, stating that Midland and its lawyers should have known that there was not enough evidence to file a successful action against him. According to Midland, it relies on

Zarzaur to determine if there is sufficient evidence for a successful collection suit, and decide which documents or witnesses should be used in that action. (*Id.* at ¶ 8.)  Yet, Midland also admits that Zarzaur acts as Midland's agent in its collection cases, and that it requires firms like Zarzaur to comply with a code of conduct or risk termination. (Murphy Dep. Vol. 1 at 93 & 94.)

On December 23, 2014, Zarzaur filed a collection action against "MKE Motes" on behalf of Midland in the Small Claims Court of Cullman County, Alabama, seeking to recover the charge-off balance of $2,069.37. (Smith Dec. ¶ 10, Ex. 7.) According to Zarzaur and Midland, the state court action was filed against "MKE Motes" who resided at the Crane Hill address based on the information contained in Midland and Synchrony's SB account records. (*Id.* at ¶ 20, Ex. 1 & 2.) The action was filed in Cullman County because Zarzaur's system—which flags zip codes that could match with more than one county—identified it as the corresponding county for the Crane Hill address zip code. (*Id.* at ¶ 11.) However, when Motes answered the complaint, he indicated that he did not live in Cullman County, and asked for the action to be transferred to Winston County. (Motes Dep. Ex. 19.) He also denied—and continues to deny—that he owed Midland any money or that he had ever done business

with them, claiming that he did not know who Midland was and noting that the name on the complaint was incorrect. (*Id.* at 282-83, Pl. Ex. H.)

Trial for the collection case was on April 8, 2015. (Smith Dec. ¶ 15.) Zarzaur did not request that Midland send a live witness for this trial because, Midland asserts, affidavits can be admitted in lieu of live testimony in Alabama Small Claims Court. (Murphy Dep. Vol. 1 at 103, Smith Dec. ¶ 14.) During the state court action and other collection attempts, Midland asserts that it required Zarzaur to "abide by all applicable laws and evidentiary and procedural rules," including a requirement that "they can't file suit until they have what they need" to "see that lawsuit through." (Smith Dec. ¶ 22, Murphy Dep. Vol. 1 at 144 & 146.) Zarzaur presented the following documents at trial: "[1] the two monthly account statements . . . [2] the Field/Seller Data sheet . . . [3] the Bill of Sale . . . [4] the charge-off information from Synchrony . . . [5] the Synchrony affidavit regarding the bill of sale, and [6] the [Midland representative] Stocker affidavit." (Smith Dec. ¶ 18.)

However, Motes claims that none of these documents is the contract of sale, and therefore, they are not enough to evidence that the sale occurred. According to Motes, the full contract can only be evidenced by the Purchase and Sale Agreement ("the PSA"), because the

Bill of Sale states that the sale is conducted "in further consideration of the mutual covenants and conditions set forth" in the PSA and that Synchrony sold "to the extent of its ownership, the Receivables . . . [] as defined" in the PSA. (Pl. Ex. A.) Further, Motes puts forward testimony that Midland very rarely provides PSAs to its lawyers for admittance at trial, did not produce it in the state court action, and has not produced it in this action, purportedly because "it is very confidential information, and [they] make other documents available." (Murphy Dep. Vol. 1 at 60-1 & 143.) Deposition testimony also demonstrates that Midland's representative had not reviewed and does not know what the PSA contains. (Murphy Dep. Vol. 1 at 61-65.) Midland, however, counters that the PSA was not produced because it is immaterial, as the Bill of Sale is enough to transfer and prove ownership. Midland also avers that after Midland objected to producing the PSA during discovery, Motes never communicated with Midland about these objections or moved to compel production.

While the state court action was pending, from February 2015 to April 8, 2015, Midland provided information about the SB account to Consumer Reporting Agencies ("CRAs"). (Murphy Dec. ¶ 13.) After judgment was entered for Motes on April 8, 2015, Midland no longer

reported on the SB account, because "[t]he Court had determined at that point in time that the defendant does not owe any money to Midland." (*Id.*, Murphy Dep. Vol. 1 at 153.) Further, Motes does not dispute that he never wrote to the CRAs to challenge the appearance of the SB account on his credit report before the state court action. Motes charges that Midland never asked and does not know why it lost the state court case against Motes. (Murphy Dep. Vol. 2 at 76-7, 82.)

According to Motes, having to defend himself at trial and "everything that that entails" caused him emotional distress. (Motes Dep. at 139-40.) Specifically, he presents testimony that the threat of garnishment or sale of his assets made him feel terrible, embarrassed him, caused him stress and anxiety, made him worry and lose sleep, hurt his marriage and his good name, kept him from taking a yearly vacation, and that when he had to tell his wife, he felt little and small. (*Id.* at 229 & 277-79.) In fact, he maintained that he had trouble sleeping every day from January 2015 until trial in April 2015. (*Id.* at 231-32.)  He also claims that his wife lost sleep as a result of Midland's actions, but admits that neither he nor his wife visited a professional or sought medication to resolve their alleged emotional distress. (*Id.* at 230-31.) However, Motes did testify that he began to suffer from Irritable Bowel Syndrome ("IBS")

during the pendency of the lawsuit, and that though he did not see a doctor about this issue, he took over the counter medication to treat it. (*Id.* at 263-64.) Yet, he admits that the IBS did not disappear when the state court action ended. (*Id.*) Motes filed this action against Midland on June 8, 2015, alleging multiple violations of the FDCPA and various state law claims.

II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "considering all of the evidence and the inferences it may yield in the light most favorable to

the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citations omitted). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

III.   DISCUSSION

A. Collateral Estoppel

The parties in this case have not raised the issue of collateral estoppel. However, a "[c]ourt may consider the preclusive effect of a prior judgment sua sponte." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1261 & n.17 (11th Cir. 2011).   In order to decide if the Alabama state court judgment has preclusive effect in this case, the Court will analyze Alabama's law of collateral estoppel. *Vazquez v. Metro. Dade Cnty.*, 968 F.2d 1101, 1106 (11th Cir. 1992). Under Alabama law, collateral estoppel is an affirmative defense which may be waived if not pleaded. *Waite v.*

*Waite*, 959 So.2d 610, 612-13 (Ala. 2006) (quoting *Waite v. Waite*, 891 So.2d 341, 343 (Ala. Civ. App. 2004). A court cannot enter summary judgment for a party based on an affirmative defense that was not pleaded by the parties. *Wausau Dev. Corp. v. Natural Gas & Oil, Inc.*, 144 So.3d 309, 315 (Ala. 2013). Motes does not mention collateral estoppel in his Response to Defendant's Motion for Summary Judgment (Doc. 34). Therefore, collateral estoppel will not be considered in this opinion.

   B. FDCPA

In his complaint (Doc. 1) Motes claims that Midland violated the FDCPA by [1] "suing [Motes] for a debt [he] did not owe" in the wrong venue and after the statute of limitations had expired,[2] [2] filing said lawsuit "in hope of obtaining a default judgment or coercing [Motes] into paying on a debt [Motes] did not owe," [3] "misrepresenting numerous facts in the lawsuit," [4] engaging in this conduct as a "pattern of collection activity by [Midland] in their collection lawsuits in Alabama," and [5] "falsely credit reporting a debt that [Motes] does not own."

---

[2] Motes does not mention the statute of limitations argument in his Response to Defendant's Motion for Summary Judgment (Doc. 34). It will therefore be deemed abandoned and not discussed in this opinion. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

The FDCPA prohibits debt collectors[3] from using "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," and "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692d & 1692e. This conduct can include litigation, and "documents filed in court in the course of judicial proceedings to collect on a debt . . . are subject to the FDCPA." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1295 (11th Cir. 2015). Further, the FDCPA also bars "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. False representation is prohibited "regardless of to whom it is directed, *so long as* it is made 'in connection with the collection of any debt.'" *Miljkovic*, 791 F.3d at 1301 (emphasis in original).

### 1.    15 U.S.C. § 1692d

The Eleventh Circuit views claims under § 1692d "from the perspective of a consumer whose circumstances make[] him relatively more susceptive to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). Here, Motes alleges that Midland violated § 1692d by instituting a collection suit against him

---

[3] The parties do not dispute that Midland is a debt collector.

in Alabama state court.  However, "the filing of a lawsuit does not have the natural consequence of harassing, abusing, or oppressing a debtor." *Miljkovic*, 791 F.3d at 1305 (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) ("[T]he filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor.")) Further, Motes cannot show that Midland violated the FDCPA by alleging that he suffered "embarrassment, inconvenience, and further expense," because "[a]ny attempt to collect a defaulted debt will be unwanted by a debtor." *Id.* (quoting *Harvey*, 453 F.3d at 330). Instead, Motes must show that Midland's "conduct . . . manifest[s] 'a tone of intimidation.'" *Id.* (quoting *Jeter*, 760 F.2d at 1179). Therefore, filing a lawsuit, as Midland did in this action, is not in itself a violation of § 1692d, as it does not necessarily "manifest a tone of intimidation."

However, Motes does not simply charge that Midland filed suit against him, but rather, that Midland filed suit knowing that Motes did not owe the debt and without intending to properly prosecute the action. Yet, the evidence indicates that Midland did prosecute the action and lost after participating in trial and presenting evidence. Motes argues that Midland's plan to file the action but not see it through properly is

demonstrated by its failure to provide the PSA at trial. But Motes also fails to provide any evidence that the PSA is required or necessary in order to properly prosecute a collection action in state court. Instead, he simply cites to *Prince v. LVNV Funding*, in which the U.S. District Court for the Middle District of Alabama denied summary judgment in favor of the defendants in a similar factual situation. No. 2:13-CV-462-WKW, 2014 WL 3361912 (M.D. Ala. 2014), *vacated per stipulation* 2014 WL 7506753.

In *Prince*, the plaintiff also declared that defendant had filed a lawsuit against her "only to obtain either a default judgment or an agreement to pay a smaller sum of money because it lacked evidence to obtain a judgment against her for the amount sought." *Prince*, 2014 WL 3361912 at *3. However, in that case, the defendant "lacked . . . a bill of sale showing its ownership of [Plaintiff's] account . . . [or] any document signed by [Plaintiff] applying for credit . . . or obligating her to pay a debt." *Id.* at *10. The court found that a question of fact existed because "a reasonable jury could infer from the circumstances [Defendant's] bad faith intent not to prove its collection claim against [Plaintiff]." *Id.* These circumstances involved disputes about "what evidence [Defendant] lacked from the outset to succeed on its collection suit, whether it

presented evidence at trial when it had the opportunity to prove its case, and whether [Plaintiff] ultimately prevailed." *Id.*

In this case, there is no dispute that Midland possessed and presented a Bill of Sale in its state court action against Motes. Therefore, *Prince* fails to support Motes's proposition that a Bill of Sale is not sufficient to prove ownership without a PSA. The court in *Prince* explains that ownership could have been shown by a Bill of Sale or by a document signed by the Plaintiff, but never mentions a PSA.[4]

In fact, the only case Motes cites for his claim under § 1692d is from *Hamilton v. Midland*, 2:14-CV-02008, a matter currently pending before another judge in this district. In an order denying Defendant's motion to dismiss, the Court stated that "the court cannot say that . . . forcing a layperson to defend himself against a purportedly baseless lawsuit lacks the element of intimidation necessary to sustain a claim pursuant to § 1692d." *Hamilton*, 2:14-CV-02008 at Doc.21. However, though Motes alleges that he did not owe the debt in this case, he cannot allege that the state court suit was entirely baseless, as Midland has provided multiple documents which attest to Midland's purported

---

[4] Though not discussed by the parties, the Court questions if Midland had in its possession the documents necessary to prove that the debt was created in the first place—such as a promissory note or contract with the alleged debtor.

ownership of a debt owed by a "MKE Motes" who lives at the address that Motes has lived at since 1996. Motes has presented no evidence that Midland's conduct in filing the state court collection action rises to the "tone of intimidation" required for a violation of § 1692d.

Motes also cannot make out a claim for violation of § 1692d by showing that Midland engaged in deceptive conduct during this lawsuit, because "Congress did not contemplate the prohibition of deceptive conduct *per se* within the confines of § 1692d." *Jeter*, 760 F.2d at 1179. Therefore, any claims that Motes has arising out of purported misrepresentations by Midland must be brought under other sections of the FDCPA. Summary judgment is due to be granted in Midland's favor as to Count One.

### 2.    15 U.S.C. § 1692e

Among the ways that a debt collector can violate § 1692e are by "false representation of . . . the character, amount, or legal status of any debt," by "[c]ommunicating . . . to any person credit information which is known or which should be known to be false," and "us[ing] . . . any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e. In this case, Motes alleges that Midland violated this section by suing him for a debt that Midland should have

known he did not owe, using misrepresentation during the lawsuit, and falsely reporting the debt to CRAs.

Claims under § 1692e are evaluated using a "least sophisticated consumer" standard, which asks "whether the 'least sophisticated consumer' would be deceived or misled by the [allegedly deceptive] communication." *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016). This standard "protect[s] naïve consumers, [but] . . . also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (*quoting United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996)).

Communications may be misleading if, for example, they "erroneously state the amount of the debt owed," or they "incorrectly identify the holder of the alleged debt." *Miljkovic*, 791 F.3d at 1306. Further, "[a] false representation in connection with the collection of a debt is sufficient . . . even where no misleading or deception is claimed." *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012). Motes charges Midland sued him for a debt he did not owe and credit reported

on that debt,[5] and therefore both "erroneously state[d] the amount of the debt owed" and "incorrectly identified the holder of the alleged debt." *Miljkovic*, 791 F.3d at 1306. As evidence of his lack of debt, Motes provides his testimony that he never opened the SB account or did business with Synchrony at all. He also shows that the state court ruled in his favor in the collections suit.[6] Midland, however, provides various documents listing the SB account as purportedly belonging to "MKE Motes" who has the same address as Motes. Because there is a dispute of material fact as to the existence of the debt, the question of whether Midland "erroneously state[d] the amount of debt owed" and "incorrectly identified [Motes] as the holder of the alleged debt" is a question for the jury.

Midland declares that it filed the lawsuit against Motes in good faith, and that it did not know that Motes did not owe the debt. Yet, "[t]he FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen v. I.C. Sys. Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). In fact, it has at times been labeled a

---

[5] Because the underlying misrepresentation—that Motes owed and Midland owned the debt—is the same for the credit reporting and lawsuit claims, they will be analyzed together.
[6] As discussed above, Motes does not allege that the defense of collateral estoppel applies, and the Court will therefore not consider the defense *sua sponte*.

"strict liability statute." *LeBlanc*, 601 F.3d at 1190. Nonetheless, the statute provides the "bona fide error" defense if "the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see Owen*, 629 F.3d at 1271. This defense is applicable if Midland shows that the "violation (1) was 'not intentional'; (2) was 'a bona fide error'; and (3) occurred despite the maintenance of procedures 'reasonably adapted to avoid any such error.'" *Owen*, 629 F.3d at 1271.

Motes maintains that Midland cannot aver that its conduct was not intentional because "Midland did not accidentally sue Motes [and] Midland did not accidentally not produce the purchase agreement at trial." (Doc. 34 at 21.) However, the proper issue is not whether Midland intentionally sued Motes, but rather, if Midland intentionally violated the FDCPA by misrepresenting the amount of the debt that Motes owed and Motes's identity as a debtor. Here, Midland provides evidence of documents which purported to identify an "MKE Motes" as the debtor. Motes does not provide any evidence that Midland knew that Motes did now owe it money. In fact, the record shows that Motes did not dispute

the debt until after Midland had instituted a collections action against him in state court. Motes simply advances an unsupported assertion that Midland did not intend to properly prosecute the action as evidence of Midland's knowing violation. Therefore, Midland has carried its burden of showing that the violation was not intentional.

Motes also claims that the error was not a "bona fide error" because "suing without ownership . . . was a deliberate decision," and "to the extent Midland seeks to blame this on a mistake of understanding what the judge would allow into evidence [that is] a mistake of law . . . [and] fails." (Doc. 34 at 21.) However, while Motes is correct in noting that some mistakes of law are not "bona fide errors" because the "defense . . . does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute," the "mistake of law" that Motes claims Midland made is not a mistaken interpretation of the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05 (2010). Nonetheless, Midland still has to show that its mistake is "objectively reasonable," and "made in good faith; a genuine mistake." *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009). As described above, Midland has provided evidence that it reasonably believed Motes owed the debt.

The fact that the state court found otherwise does not, in itself, turn Midland's mistake into a bad faith or unreasonable error. Neither do the unsupported allegations about Midland's lack of intention to properly prosecute this case. Therefore, Midland has carried its burden of showing that the error was a "bona fide error."

Lastly, Midland must prove that it made this error "despite the maintenance of procedures 'reasonably adapted to avoid any such error." *Owen,* 629 F.3d at 1271. In order to meet this standard, Midland must show (1) that it "'maintained' . . . procedures to avoid errors," and (2) that "the procedures were 'reasonably adapted' to avoid the specific error at issue." *Id.* at 1274 (quoting *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)). Here, Midland alleges that it had procedures for checking the accuracy of the data on its account records, and that it implemented these procedures regularly. Specifically, it provided testimony that the documents were checked to makes sure that the data made sense. (Murphy Dep. Vol. 1 at 66-9.) Further, Midland also maintains that it holds its collection counsel (like Zarzaur) to a code of conduct. Therefore, Midland has provided enough evidence to show that it maintains procedures to avoid errors.

However, Midland cannot show that the "procedures [are]

reasonably adapted to avoid readily discoverable errors," because the error in this case should have been easily discernible. *Owen*, 629 F.3d at 1276. A procedure that fails to notice that a debtor's first name is listed as MKE cannot be said to be appropriate to avoid error. *See Id.* (holding that a mistake listing compound interest instead of simple interest would have been discovered by reasonable procedures). Therefore, Midland fails to prove the last element for the defense of bona fide error, and a dispute of fact remains as to its violation of § 1692e. Summary judgment as to Counts Two, Three, Four, and Five is due to be denied.

### 3.    15 U.S.C. § 1692f

Further, § 1692f is a "catch-all provision" that prohibits "us[ing] unfair or unconscionable means to collect or attempt to collect any debt" including "collection of any amount . . . unless such amount is expressly authorized by the agreement creating debt." 15 U.S.C. § 1692f; *Miljkovic*, 791 F.3d at 1308. Claims under § 1692f are also analyzed using the "least sophisticated consumer" standard. *Le Blanc*, 601 F.3d 1185, 1200. Midland has not "allege[d] any conduct beyond that which he asserts violates the other provisions of the FDCPA, and . . . fails to specifically identify how [Midland's] conduct here was either unfair or

unconscionable in addition to being abusive, deceptive, or misleading."
*Miljkovic*, 791 F.3d at 1308.

Therefore, the success of this claim is largely dependent on the outcome of the § 1692e claim, as the factual assertions are identical. *LeBlanc*, 601 F.3d at 1200. As with § 1692e, the bona fide error defense is also applicable to § 1692f, and the analysis will be the same, as the conduct alleged is indistinguishable. Thus, summary judgment as to Counts Six and Seven is due to be denied.

### 4.    15 U.S.C. § 1692i

Motes does not mention § 1692i in his Response to Defendant's Motion for Summary Judgment (Doc. 34). Because "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned," Motes's claims against Midland under § 1692i are deemed abandoned. *Resolution Trust Corp.*, 43 F.3d at 599.  Summary judgment in Midland's favor is due to be granted as to Count Eight.

### C. State Law Claims

### 1.    Invasion of Privacy

Motes does not mention his claim for invasion of privacy in his Response to Defendant's Motion for Summary Judgment (Doc. 34). Therefore, Motes's claims against Midland for invasion of privacy are

deemed abandoned. *See Id*.  Summary judgment in Midland's favor is due to be granted as to Count Nine.

### 2.    Hiring, Training, and Supervision

Motes does not mention his hiring, training and supervision claims in his Response to Defendant's Motion for Summary Judgment (Doc. 34). Therefore, Motes's claims against Midland for negligent, wanton, or intentional hiring, training and supervision are deemed abandoned. *See Id*.  Summary judgment in Midland's favor is due to be granted as to Counts Ten[7] and Eleven.

### 3.    Wanton Conduct

Motes does not mention the wanton conduct claim in his Response to Defendant's Motion for Summary Judgment (Doc. 34). Therefore, Motes's claims against Midland for wanton conduct are deemed abandoned. See *Id*.  Summary judgment in Midland's favor is due to be granted as to Count Twelve.

### 4.    Malicious Prosecution

In order to state a claim for malicious prosecution under Alabama law, a plaintiff must show the existence of "(1) a judicial proceeding

---

[7] Motes's complaint lists two Count Tens. The first one is for "Negligent Hiring, Training and Supervision of Incompetent Debt Collectors." The second is for "Wanton Hiring, Training, and Supervision of Incompetent Debt Collectors." Summary judgment in Midland's favor is granted as to both.

initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination in favor of the plaintiff, and (5) damage." *Cutts v. Am. United Life Ins. Co.*, 505 So.2d 1211, 1214 (Ala. 1987). Here, two of the elements are easily proven by the plaintiff. There is no dispute that Midland initiated a judicial proceeding against Motes in state court, or that judgment was entered in favor of Motes in the state court suit.

The elements of lack of probable cause, malice, and damage are in dispute. A finding of probable cause requires "that the claimant reasonably believe that there is a chance that his claim may be held valid upon adjudication." *Willis v. Parker*, 814 So.2d 857, 863 (Ala. 2001). As explained above in the discussion about § 1692e, Midland could reasonably have believed that Motes owed the debt sued upon. However, it is disputed whether Midland could have reasonably believed that they could win the collections suit without presenting the PSA and with documents that purported to state that "MKE Motes" owed the debt. Therefore, there is a dispute of material fact about the element of probable cause. Because there is a dispute of material fact on at least one of the elements of malicious prosecution, summary judgment on Count Thirteen is due to be denied.

IV.   CONCLUSION

For the reasons stated above, Midland's motion for summary judgment is due to be GRANTED in part and DENIED in part. Summary judgment as to Counts Two, Three, Four, Five, Six, and Seven is due to be denied. Summary judgment in Midland's favor is due to be granted as to Counts One, Eight, Nine, Ten, Ten,[8] Eleven, Twelve, and Thirteen. Further, Plaintiff's Motion to Strike (Doc. 33) and Defendants' Motion to Strike (Doc. 39) are DENIED AS MOOT. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** this 6th day of January 2017.

_____
L. Scott Coogler
United States District Judge

186291

---

[8] As previously noted, Plaintiff listed two Count Tens in his Complaint (Doc. 1). Summary judgment is due to be granted as to both of these counts.